# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| ANTONIO MENDEZ-RAMOS, ) <br> ) <br> ) <br> Movant, ) <br> ) <br> v. ) <br> ) <br> ) <br> UNITES STATES OF AMERICA, ) <br> ) <br> ) <br> Respondent. ) <br> ) | CRIMINAL NO. 5:17-cr-13 (MTT) <br><br> CIVIL ACTION NO. 5:21-cv-244 (MTT) |

## ORDER

Movant Antonio Mendez-Ramos pled guilty to conspiracy to possess methamphetamine with intent to distribute in violation of 21 U.S.C. § 846 in connection with 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).  Docs. 278; 282.  He now moves to vacate, set aside or correct his sentence under 28 U.S.C. § 2255.  Doc. 616.  United States Magistrate Judge Charles H. Weigle recommends denying Mendez-Ramos's motion.  Doc. 644.  Mendez-Ramos objects (Doc. 658),[1] so under 28 U.S.C. § 636(b)(1), the Court reviews the portions of the Recommendation to which he objects de novo and the remaining portions for clear error.[2]  Specifically, Mendez-Ramos did

---

[1] Mendez-Ramos's motion for leave to file excess pages (Doc. 657) is reluctantly **GRANTED**.  See note 7 *infra* at 6.

[2] In his objection, Mendez-Ramos argues, for the first time, that the failure to obtain his consent for referral to the Magistrate Judge is a jurisdictional error under the Federal Magistrate Judge Act of 1979. Doc. 658 at 3.  Consent to refer a case to a Magistrate Judge is necessary only if the Magistrate Judge is assigned to handle civil jurisdiction under section 636(c)(1), or if the case is referred to a Magistrate Judge for all purposes.  *See Roell v. Withrow*, 538 U.S. 580, 585-86 (2003); Fed. R. Civ. P. 73.  Because this case was neither referred for the Magistrate Judge's full jurisdiction nor for all purposes, the parties' consent was not required.

not object to the Magistrate Judge's Recommendation that Mendez-Ramos's motion be denied based on claims trial counsel was ineffective because she failed to file a motion to suppress, discussed in section II(1) below, and that Mendez-Ramos's motion be denied based on claims trial counsel rendered ineffective assistance in plea negotiations, discussed in section II(2) below.

## I. BACKGROUND

On April 11, 2017, Mendez-Ramos and twelve codefendants were indicted on various counts of drug-related charges. Doc. 1. Mendez-Ramos was indicted on one count of conspiracy to possess with intent to distribute methamphetamine, in excess of 50 grams; one count of conspiracy to possess with intent to distribute marijuana; and one count of possession with intent to distribute methamphetamine, in excess of 50 grams, in violation of 21 U.S.C. § 846 in connection with 21 U.S.C. §§ 841(a)(1), 841 (b)(1)(A)(viii), and 841 (b)(1)(D). *Id*. On March 21, 2018, Mendez-Ramos entered a plea agreement and agreed to plead guilty to a superseding information charging him with one count of conspiracy to possess methamphetamine with intent to distribute, with no specified drug amount, in violation of 21 U.S.C. § 846 in connection with 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Docs. 281; 282. Count One as charged in the original indictment carried a 10-year mandatory minimum sentence and a maximum penalty of life under § 841(b)(1)(A)(viii); by removing the specified drug quantity and charging the offense in connection with 21 U.S.C. § 841(b)(1)(C), the superseding information lowered the sentencing range to a 20-year maximum with no mandatory minimum. Doc. 278.

The factual basis for Mendez-Ramos's guilty plea was provided by stipulated facts establishing Mendez-Ramos played at least a mid-level role in the conspiracy. Specifically, he was the link to the conspiracy's source of supply, he facilitated drug exchanges, and he was a part of the distribution chain for large quantities of methamphetamine. Doc. 282 at 13-17. Mendez-Ramos admitted in the plea agreement and at his change of plea hearing that he conspired with others from May 2016 to October 2016 and stipulated that the amount of drugs attributable to him was 4.5 kilograms or more of Ice. *Id.* at 17. Statements of co-defendants, surveillance by law enforcement, wiretap recordings of incriminating conversations involving Mendez-Ramos, and large amounts of cash and drugs seized from co-defendants further supported Mendez-Ramos's involvement in drug trafficking activities with his co-conspirators. Docs. 282 at 13-17; 496 at 3:25-5:5, 4:25-5:4, 6:17-8:19, 12:6-15.

The Court deferred acceptance of Mendez-Ramos's plea agreement until after the completion of the presentence investigation report. Doc. 494 at 20:13-14. The presentence report recommended a sentencing range of 210-262 months based on Mendez-Ramos's stipulation that 4.5 kilograms or more of Ice was attributable to him as well as a two-level upward adjustment for Mendez-Ramos's role as "an organizer, leader, manager, or supervisor" under U.S.S.G. § 3B1.1(c).[3] Doc. 367 at 8. The enhancement for Mendez-Ramos's aggravated role was based on his stipulation that when co-defendant Walter Williams ordered large quantities of drugs for his distribution ring from co-defendant Ruben Perez, Perez would then contact Mendez-Ramos, and

---

[3] The guideline was capped at 240 months by the statutory maximum sentence, and Mendez-Ramos also received a three-level downward departure for acceptance of responsibility. Doc. 379.

Mendez-Ramos would contact an unidentified supplier[4] who would provide the ordered drugs to a courier who would deliver the drugs to Williams's courier.  Doc. 282 at 16-17.  Williams estimated that he obtained a total of approximately 50 kilograms of methamphetamine from Perez over an approximate five-month period.  *Id.*  at 16.  After $31,500 was seized from one courier, co-defendant Bobby Martinez,[5] Mendez-Ramos and Perez discussed the seizure during a recorded conversation.  Docs. 282 at 17; 496 at 7-8.  Mendez-Ramos's stipulation was supported by the proffered testimony of a co-defendant and corroborated by law enforcement surveillance, incriminating wiretap recordings, and large amounts of drugs and cash seized from other co-defendants.  Docs. 282 at 13-17; 496 at 6:17-8:19, 9:6-18.

On August 28, 2018, the Court accepted Mendez-Ramos's plea agreement and sentenced him to 210 months in prison, the bottom of the guidelines range.  Doc. 496 at 2:10-14, 13:5-19.  Mendez-Ramos then filed a direct appeal, which the Eleventh Circuit dismissed based on his agreement to waive his right to appeal subject to certain exceptions.  Doc. 609.

---

[4] During exchanges with the government, Perez referred to the supplier as "El Churo," whereas Mendez-Ramos referred to him as "El Vejo."  Doc. 496 at 7:6-11.  At sentencing, trial counsel denied that Mendez-Ramos was the link between Perez and El Churro/El Vejo.  During his cooperation with law enforcement, however, the government explained that Perez tried to get the supplier's true identity to help agents determine who El Vejo or El Churo was, but Perez had never met this individual, he did not know his real name, and had never seen him. *Id.* at 7-8.  Accordingly, Perez contacted Mendez-Ramos in attempts to discover the supplier's identity and law enforcement conducted the recorded phone call that is mentioned in the plea agreement where Perez and Mendez-Ramos discussed the seizure of $31,500 which they owed to El Churro/El Vejo. *Id.* at 7:22-8:10.

[5] It is undisputed that Mendez-Ramos recruited Bobby Martinez to serve as Perez's courier.  Docs. 367 at 6; 496 at 4:2-5, 6:1-2, 7:12-15.

## II. DISCUSSION

Mendez-Ramos moves to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. Doc. 616. In support of his motion, Mendez-Ramos makes various arguments for relief based on ineffective assistance of counsel. Docs. 616; 621; 630. First, Mendez-Ramos argues ineffective assistance of trial counsel based on the failure to pursue *Miranda* and Fourth Amendment violations. Doc. 621 at 5. Second, he argues that his attorney provided ineffective assistance "during the 'critical stage' of the plea negotiation[,] bargaining process[,] and offer discussion." *Id.* at 15. Third, he claims that his attorney provided ineffective assistance "during the change of plea proceedings." *Id*. at 23. Fourth, he complains that his attorney provided ineffective assistance at sentencing "for breaching her professional duties and failing to subject the sentencing proceedings to a meaningful adversarial testing." *Id*. at 31. Finally, Mendez-Ramos raises claims of ineffective assistance of appellate counsel in his reply brief as well as additional claims of ineffective assistance related to trial counsel's plea negotiations. Doc. 630.

To prevail on claims of ineffective assistance, movants must generally show (1) deficient performance, meaning "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," [6] and (2) prejudice, meaning "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 688, 694 (1984). In cases challenging a conviction

---

[6] A movant may establish deficient performance by demonstrating that counsel's advice was not within the "range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771 (1970).

pursuant to a guilty plea, a movant may only attack the "voluntary and intelligent character of the guilty plea," and he must show he "would have pleaded not guilty but for the ineffective assistance." *Hill v. Lockhart,* 474 U.S. 52, 56, 59 (1985); *Davidson v. United States*, 138 F. App'x 238, 240 (11th Cir. 2005). The Court addresses each of Mendez-Ramos's arguments in turn.[7]

> 1. *Ineffective Assistance of Counsel:* Miranda *and Fourth Amendment Rights Violations*

Mendez-Ramos argues his attorney rendered ineffective assistance by failing to pursue violations of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966) and the Fourth Amendment. Doc. 621 at 5-7. This argument fails.

Mendez-Ramos's motion and accompanying brief do not identify any specific *Miranda* or Fourth Amendment issue related to his prosecution. Docs. 616; 621. Nothing in the record suggests either a *Miranda* or Fourth Amendment issue because there is no indication that Mendez-Ramos ever gave a custodial statement, with or without *Miranda* warnings.

In his reply brief, Mendez-Ramos argues that counsel was ineffective for failing to file a pretrial motion to suppress the seizure of $49,589.00, which he agreed to forfeit in his plea agreement. Doc. 630 at 4, 8. According to Mendez-Ramos, the funds were seized unlawfully from his apartment without a warrant. *Id.* This argument fails because Mendez-Ramos voluntarily agreed to forfeit the funds as part of his plea agreement, and the seizure was not used as substantive evidence in his prosecution.

---

[7] Mendez-Ramos's objection, like his memorandum in support of his motion and his reply brief, is over 40 pages long and is largely devoid of specific facts supporting his claims. Doc. 658; *see also* Docs. 621; 630; 644 at 11. Accordingly, the Court organizes Mendez-Ramos's overlapping objections, as best the Court can tell, according to the arguments, again as best the Court can tell, they are intended to support.

*See* Docs. 282 at 13-17; 496 at 6:17-8:19, 12:6-15.  The record clearly establishes that the evidence against Mendez-Ramos did not include any funds seized from his apartment, and the factual stipulation in the plea agreement refers only to $31,500.00 seized from a co-defendant during a traffic stop on October 20, 2016.  Doc. 282 at 15.  Accordingly, the decision not to file a motion to suppress was objectively reasonable and did not prejudice Mendez-Ramos.

Thus, nothing in the record or Mendez-Ramos's arguments indicates that a successful motion to suppress would have made him more or less likely to enter a guilty plea or proceed to trial.

Accordingly, the Magistrate Judge did not plainly err when he recommended that relief be denied on these grounds.  Out of caution, the Court has reviewed the recommendations de novo and agrees with the Magistrate Judge's recommendations.

   2. *Ineffective Assistance of Counsel: Plea Negotiations*

Next, Mendez-Ramos argues that counsel rendered ineffective assistance during plea negotiations.  *See* Docs. 621; 630.  First, Mendez-Ramos suggests that counsel failed to negotiate a plea deal requiring the government to move under U.S.S.G. § 5K1 or Rule 35 for substantial assistance based on his proffer to the government.[8]  Doc. 621 at 15-21.  Mendez-Ramos does not say how counsel could have forced the government to move for a downward departure.  *See* Docs. 621; 630.  In fact, it is well established that the government has the power but no obligation to move for a downward departure

---

[8] Specifically, Mendez-Ramos argues counsel was ineffective in "negotiating" the provisions of paragraphs 3(H) and 4(B) of his plea agreement, which are standard provisions in the government's plea agreement and are not ordinarily subject to negotiation.  Doc. 621 at 15-21.  Both paragraphs are related to sentencing recommendations under § 5K1.1 and/or 18 U.S.C. § 3553(e).

based on a defendant's substantial assistance.[9]  *See United States v. Dorsey*, 554 F.3d 958, 960–61 (11th Cir. 2009) (quoting *Wade v. United States*, 504 U.S. 181, 185-86 (1992)).  Here, the government explained that because several co-defendants had already pleaded guilty and were cooperating with the government, the information Mendez-Ramos provided was either already known or was not very helpful and therefore did not, in the government's opinion, constitute substantial assistance. Docs. 357 at 2; 625 at 1.  There is no basis, factual or legal, for Mendez-Ramos's contention that counsel was deficient because she failed to force the government to move for a downward departure based on substantial assistance.

Second, Mendez-Ramos argues counsel rendered ineffective assistance in failing to negotiate a sentence reduction under U.S.S.G. § 5C1.2(a) and the "safety valve" of 18 U.S.C. § 3553(e).  Doc. 621 at 19.  Because counsel negotiated a plea to a charge without a mandatory minimum sentence, however, neither § 5C1.2(a) nor the safety valve of § 3553(e) apply to this case.

Next, Mendez-Ramos raises four additional claims of ineffective assistance in his reply brief related to plea negotiations.  Doc. 630 at 14-15.  These new grounds essentially argue that counsel was ineffective for failing to negotiate a better plea deal. However, as noted by the Magistrate Judge, there is no evidence that a better plea deal was available.  *See* Doc. 644 at 20.  Instead, the record shows that Mendez-Ramos faced a high risk of conviction, with several co-defendants having already pleaded guilty

---

[9] "[F]ederal district courts have authority to review a prosecutor's refusal to file a substantial-assistance motion and to grant a remedy [only] if they find that the refusal was based on an unconstitutional motive," like "race or religion."  *United States v. Dorsey*, 554 F.3d 958, 960–61 (11th Cir. 2009) (quoting *Wade v. United States*, 504 U.S. 181, 185-86 (1992)).  Mendez-Ramos has not argued, yet alone made a substantial showing, that the United States's motives were unconstitutional.

and agreeing to testify against him. Mendez-Ramos's co-defendants also made proffers indicating that Mendez-Ramos "had a much larger role" in the conspiracy than he had maintained and at least one co-defendant was prepared to testify that Mendez-Ramos "was the link between him and the Mexican connection for bringing the methamphetamine … from Mexico" into the United States. Doc. 516 at 6-7. Because Mendez-Ramos's defense largely aimed to downplay the extent of his involvement in the conspiracy, counsel's decision to negotiate a plea deal that significantly reduced Mendez-Ramos's sentencing exposure—from a mandatory minimum ten years to life to a maximum of 20 years with no mandatory minimum—was well within the scope of reasonable representation.[10] Thus, Mendez-Ramos has not shown deficient performance or prejudice, and his claims fail under *Strickland*.

Finally, Mendez-Ramos's reply brief argues that counsel provided ineffective assistance when she "affirmatively guaranteed" that he would receive a ten-year sentence. Doc. 630 at 15. The record does not support that counsel ever made such a guarantee. Doc. 644 at 20-22. But even if she did, the Court warned Mendez-Ramos at his change of plea hearing that the sentence "could be different than any estimate somebody may have given [him] as to what they think [his] sentence might be" and that he "should not plead guilty based on any such estimate." Doc. 494 at 21. Mendez-Ramos acknowledged under oath he understood this.[11] *See United States v. Gillette*,

---

[10] Contrary to Mendez-Ramos's argument, § 841(b)(1)(C) does not mandate a mandatory minimum of 20 years to life—as evidenced by the fact that he did not receive a mandatory minimum sentence of 20 years. Doc. 658 at 31.

[11] The Court then deferred acceptance of Mendez-Ramos's plea agreement until after the presentence investigation report was completed, and Mendez-Ramos never moved to withdraw his plea. Doc. 494 at 20:13-14.

441 F. App'x 755, 757 (11th Cir. 2011). Mendez-Ramos also acknowledged in his plea agreement that he would not be allowed to withdraw his plea because of any estimated guideline range received from his attorney, the government, or the Probation Office that differed from the advisory guideline range computed by the Probation Office and contained in the presentence investigation report. Doc. 282 at 3. Thus, Mendez-Ramos is not entitled to relief on this basis.

Accordingly, the Magistrate Judge did not plainly err when he recommended that relief be denied on these grounds. Out of caution, the Court has reviewed the recommendations de novo and agrees with the Magistrate Judge's recommendations.

### 3. Ineffective Assistance of Counsel: Change of Plea Hearing

Mendez-Ramos makes various arguments that his counsel was ineffective for failing to object at the plea hearing to the Court's failure to comply with Rule 11 of the Federal Rules of Criminal Procedure. Doc. 621 at 27. Rule 11 requires courts to ensure a plea of guilty is voluntary and that the defendant understands the nature of the charges, the mandatory minimum penalty provided by law, and the maximum penalty. Fed. R. Cr. P. 11(b).

First, Mendez-Ramos argues that the Court failed to comply with Rule 11 because "[t]he guilty plea nowhere specify [sic] or explain that the petitioner waived his right against self-incrimination, warned the petitioner of the government's right to prosecute for false statement made under oath, the court's authority to 'order restitution,' 'forfeiture' and consider any departure and 18 U.S.C. § 3553(a) factors." Docs. 621 at 28; 658 at 17-19. This argument fails because the record clearly shows that the Court engaged in a thorough colloquy with Mendez-Ramos and confirmed his

understanding and the voluntariness of his plea.  The Court explicitly informed Mendez-Ramos of the rights he was waiving by pleading guilty,[12] and the Court ensured that Mendez-Ramos understood the elements of the charge, the potential penalties, and the consequences of his plea.[13]  Doc. 494 at 6-10, 20, 23-24.  The record shows that Mendez-Ramos was advised of the applicability of the sentencing guidelines and the Court's authority to sentence him.  *Id.* at 21.  Mendez-Ramos testified under oath that he had conferred with his attorney and understood the terms of the plea agreement.  *Id.* at 6-8.  Thus, the procedural safeguards outlined in Rule 11 were properly followed, and Mendez-Ramos cannot show counsel was somehow deficient for failing to raise a meritless objection.

Second, Mendez-Ramos argues that the Court violated Rule 11(b) by failing to ensure he understood the charge against him, particularly, the government's obligation to prove his agreement to the alleged conspiracy.[14]  Doc. 658 at 13, 17-18, 24.  This

---

[12] The Court specifically stated at the plea colloquy that Mendez-Ramos would be waiving his right to a jury trial by entering a guilty plea and explained that he "would be presumed innocent [at trial], and the Government would have to prove [his] guilt beyond a reasonable doubt."  Doc. 494 at 6.  The Court further explained that Mendez-Ramoz could not be compelled to testify against himself at trial, and this statement was sufficient to advise Mendez-Ramos of his Fifth Amendment right to be protected from compelled self-incrimination.  *Id.* at 6-7.

[13] There were no victims, and the government did not seek restitution.  Thus, the government did not state at the change of plea hearing that Mendes-Ramos's guilty plea would subject him to restitution when it detailed the penalties and consequences of his guilty plea. Nor did the government raise forfeiture at the hearing.  However, forfeiture was covered in the plea agreement, and Mendez-Ramos agreed to forfeit any interest he had in any and all property subject forfeiture "including but not limited to … forty-nine thousand, five hundred and eighty-nine dollars ($49,589.00)" allegedly seized during the government's investigation.  Doc. 282 at 9-10.  Thus, Mendez-Ramos has failed to demonstrate that any possible error affected his substantial rights or that he would not have entered the guilty plea had the Court provided additional information.

[14] Mendez-Ramos argues the Court "never told [him] that to prove the conspiracy charge, the government would have to show … that the conspiracy involved 4.5 kilograms or more of a mixture of substance containing a detectable amount of methamphetamine." Doc. 658 at 15.  To be clear, the government can prove a § 846 violation based solely on a defendant's knowing and voluntary agreement with another individual to distribute drugs, without any proof that those drugs even existed.  *See United States v. Shabani*, 513 U.S. 10, 13-17 (1994); *see also United States v. Wilkerson*, 704 F. Supp. 3d 1359, 1365

argument fails because the record clearly shows that the elements of the conspiracy charge were thoroughly addressed at the change of plea hearing.  The government stated that the elements of the charge were: (1) that two or more people in some way agreed to try to accomplish a shared and unlawful plan; (2) that Mendez-Ramos knew the unlawful purpose of the plan and willfully joined in it; and (3) that the object of the unlawful plan was to possess with intent to distribute methamphetamine.  Doc. 494 at 12:9-19.  Mendez-Ramos testified under oath that he understood the charge.  Doc. 494 at 12:23-25.  Thus, the plea colloquy confirms that Mendez-Ramos understood the nature of the charge against him.

Finally, Mendez-Ramos argues the Court violated Rule 11 by "not confirming the existense [sic] of facts sufficient to demonstrate a conspiracy" before accepting his plea.[15]  Doc. 658 at 10, 19, 22.  This argument fails because Mendez-Ramos stipulated to facts about his involvement in the conspiracy to possess and distribute methamphetamine,[16] the individuals he conspired with, his role in facilitating drug

---

(M.D. Ga. 2023).  Drug type and quantity are relevant only for purposes of sentencing under § 841(b)(1).  Mendez-Ramos makes two additional arguments related to drug quantity in his objection: (1) that he did not understand that by conceding he was involved in the conspiracy that he would be held legally responsible for all drug amounts traceable to that illegal agreement; and (2) that his plea was based on a superseding information that did not specify the drug quantity in violation of his due process rights.  Doc. 658.  The first argument fails because the parties stipulated in the plea agreement that for purposes of sentencing under the guidelines, Mendez-Ramos was responsible only for drugs "attributable to him."  Doc. 282 at 17.  He was not held responsible for all drugs traceable to the conspiracy.  The second argument also fails because there is no requirement that the government specify drug quantity in an indictment or information under 21 U.S.C. §§ 846 or 841(b)(1)(C).

[15] Specifically, Mendez-Ramos argues that the evidence is insufficient to support his plea "because a conspiracy conviction requires proof of a 'criminal agreement' beyond the confines of an ordinary buyer-seller relationship."  Doc. 658 at 19.

[16] The stipulated facts were in turn supported by testimony of co-defendants, who had previously entered guilty pleas and had agreed to testify against Mendez-Ramos at trial, and this testimony was corroborated by surveillance of Mendez-Ramos during a transaction with a co-conspirator, the seizure of 2,969.2 grams of methamphetamine, and a recorded telephone call between Mendez-Ramos and a co-defendant, among other things.  Docs. 282 at 13-17; 496 at 3:25-5:5, 6:17-8:19, 12:6-15.

exchanges, the quantity of drugs attributable to him, and the duration of his drug distribution activities.  Doc. 282 at 13-17.  These facts formed the basis for Mendez-Ramos's guilty plea.  Thus, there was sufficient evidence to support Mendez-Ramos's plea before it was accepted by the Court.

In sum, the Court finds no Rule 11(b) violation that would render Mendez-Ramos's plea invalid.  Thus, Mendez-Ramos is not entitled to relief based on any alleged failure to comply with Rule 11(b) or counsel's failure to object to such failure.

*4.  Ineffective Assistance of Counsel: Sentencing Proceedings*

Mendez-Ramos argues his counsel was deficient at sentencing: (1) by failing to adequately contest a two-point upward adjustment for his role as an organizer or leader, and (2) by failing to litigate the United States's alleged breach of his plea agreement.[17]  Doc. 621 at 35-38.  Both arguments fail.

First, Mendez-Ramos argues counsel was ineffective for failing to object to the Court's application of a "relaxed evidentiary standard" in determining that he played a leadership or organizing role in the conspiracy.  Doc. 621 at 37-38.  Specifically, Mendez-Ramos argues there was insufficient evidence to support the enhancement.  *Id.*  First, Mendez-Ramos references the wrong aggravating role enhancement.  *See* Doc. 658 at 33 (citing U.S.S.G. § 3B1.1(a)).  The enhancement for an organizer or leader of a large and extensive conspiracy such as this one would have been four levels.  Mendez-Ramos received a minimum two-level enhancement as an "an organizer, leader,

---

[17] Mendez-Ramos also argues in his objection that he received an unfair and procedurally reasonable sentence because the Court misapplied and/or miscalculated his sentence.  Doc. 658 at 29-30.  However, Mendez-Ramos raised no argument about the sentencing guidelines.  Instead, he argues that the prosecution brought charges against him under a statute that his conduct did not support.  *Id.*  As the Court has already explained, there was sufficient evidence to support Mendez-Ramos's guilty plea and conviction.  Thus, this argument fails.

manager, or supervisor." U.S.S.G. § 3B1.1(c).  Second, the enhancement was based on facts stipulated in the plea agreement and confirmed at the change of plea hearing,[18] facts that, if anything, warranted a greater enhancement.  *See* Doc. 496 at 4, 6, 7:17-18.  Mendez-Ramos was not a street level distributor in the conspiracy.  Far from it, he was the link to the conspiracy's source of supply; he was involved in the arrangements made for the delivery of drugs at the upper level of the conspiracy, i.e., the transport of drugs to Williams; and he shared in the profits of those deliveries.  Doc. 282 at 13-17.  Further, when law enforcement stopped one of the couriers, codefendant Bobby Martinez, and confiscated $31,500, the supplier held Mendez-Ramos responsible for that loss.  *Id.* at 15, 17.  Even still, counsel vigorously objected to the enhancement at sentencing and filed a written objection in advance of the sentencing hearing, which the Court overruled.  Thus, Mendez-Ramos's claims lack merit, and he is not entitled to relief on this basis.

Second, Mendez-Ramos argues counsel was ineffective for failing to object to alleged breaches of the plea agreement, which he claims the United States breached in three ways: (1) by failing to seek a sentence reduction under U.S.S.G. 5K1.1; (2) by using evidence in his plea proffer against him; and (3) by straying from its "neutrality agreement" by making a sentencing argument to the Court.  Doc. 621 at 35-37.  The first argument fails because the plea agreement provided that the decision to seek a

---

[18] Mendez-Ramos's objection suggests that the Court's reliance on the stipulated facts from the plea agreement, without additional fact-finding somehow violated his due process and Sixth Amendment rights.  Doc. 658 at 38.  This argument fails.  *See United States v. Baptiste*, 935 F.3d 1304, 1308 (11th Cir. 2019), *cert. denied*,—— U.S. ——, 140 S. Ct. 2751 (May 4, 2020) (holding sentencing court need not make explicit reliability findings where reliability is apparent from the record); *see also United States v. Wilson*, 183 F.3d 1291, 1301 (11th Cir.1999) ("A court may consider any information (including hearsay), regardless of its admissibility at trial, in determining whether factors exist that would enhance a defendant's sentence, provided that the information is sufficiently reliable.")

downward departure based on substantial assistance was within the sole discretion of the government, and the government's decision was ultimately based on the lack of useful information provided by Mendez-Ramos. Doc. 282 at 7-8. The second argument fails because the two-level enhancement for Mendez-Ramos's role in the conspiracy was based on stipulated facts in the plea agreement, not on facts in his proffer to the government. Finally, the third argument fails because nothing in the plea agreement can be construed as an agreement that the government would remain neutral and take no position at sentencing. Accordingly, Mendez-Ramos is not entitled to relief under § 2255 based on these grounds.

### 5. *Ineffective Assistance of Appellate Counsel: Objections to Plea Colloquy*

Mendez-Ramos's final argument is that appellate counsel was ineffective in failing to raise on appeal his claim that the Court failed to follow the requirements of Rule 11 in its plea colloquy. Doc. 630 at 42-44. Although appellate counsel decided not to raise this issue, counsel's decision not to raise certain arguments was within the scope of reasonable representation because, as explained, the plea colloquy adequately addressed core concerns about the plea being free from coercion and ensured Mendez-Ramos understood the charge and consequences of his plea. Accordingly, Mendez-Ramos is not entitled to relief on this basis.

### III. CONCLUSION

After review, the Court accepts the findings, conclusions, and recommendations of the Magistrate Judge. The Recommendation (Doc. 644) is **ADOPTED**. Mendez-Ramos's 28 U.S.C. § 2255 motion (Doc. 616) is **DENIED**. For the foregoing reasons, the Court further concludes that Mendez-Ramos has failed to make a substantial

showing of the denial of a constitutional right.  28 U.S.C. § 2253(c).  Accordingly, a certificate of appealability is also **DENIED**.

**SO ORDERED**, this 26th day of September, 2024.

S/ Marc T. Treadwell  
MARC T. TREADWELL, JUDGE  
UNITED STATES DISTRICT COURT